OPINION OF THE COURT
Thomas Marcelle, J.
This matter arises out of the court’s small claims jurisdiction (UCCA 1802). A trial was held on November 7, 2016 in Cohoes City Court. The evidence established that plaintiff Amie Hamilton rented a room from defendant David Bosko. The lease started on November 12, 2012. At that time, Hamilton paid Bosko a security deposit of $750. Further, Hamilton testified that during the middle of the lease she changed apartments at Bosko’s request and that the new apartment had not been cleaned prior to her moving in.
Hamilton faithfully made monthly rent payments of $750 until she quit the lease in October 2015. Hamilton sought the return of her security deposit which Bosko refused to remit. After an exchange of letters including letters from the parties’ attorneys, no one budged and Hamilton commenced this action.
At trial, Hamilton provided photographs and testimony that the apartment was left in a condition that reflected no more damage than would be expected from reasonable wear and tear. In contrast, Bosko claimed that the apartment was abnormally dirty. In particular, his witnesses testified that garbage was lodged under the stove, the sink and the tub had stains, food items remained in the refrigerator, dog hair littered the apartment, garbage was left on the back porch and the windows and ceiling fans were dirty. Beyond the cleanliness issues, Bosko offered evidence concerning physical damage—several areas of moulding had been scratched and chewed by a dog and an alteration had been made to an electrical outlet.
Security deposits are regulated by statute. In particular, General Obligations Law § 7-103 (1) provides in pertinent part that
“[w]henever money shall be deposited . . . for the use or rental of real property as security for performance of the contract or agreement . . . such money . . . shall continue to be the money of the person making such deposit or advance and shall be held in trust by the person with whom such *388 deposit or advance shall be made and shall not be mingled with the personal moneys or become an asset of the person receiving the same.”
Accordingly, under General Obligations Law § 7-103 (1) a security deposit remains the property of the tenant and must be returned at the conclusion of the tenancy absent proof that the tenant caused damage beyond that attributable to ordinary wear and tear (Mazzarelli v Moniaci, 21 Misc 3d 129[A], 2008 NY Slip Op 51967[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2008]). Security deposit claims come regularly before the local courts. Nevertheless, there appears to be no cases that precisely enumerate the elements and burdens imposed upon the tenant and the landlord under General Obligations Law § 7-103 (1).
The court holds that in a security deposit case, a tenant must prove the following elements: (1) the tenant paid a security deposit to the landlord, (2) the tenant caused no damage to the apartment beyond ordinary wear and tear, (3) the tenant made a demand for the return of the security deposit, and (4) the landlord refused to return the security deposit.
Once those elements are met, the tenant has established that the security deposit is her property. At this point, the burden shifts to the landlord. For the landlord to retain a security deposit he must prove two things: (1) the landlord must show that the tenant caused damaged to the property beyond ordinary wear and tear and (2) the landlord must prove what cost was incurred (or is estimated to incur) in order to re-mediate the extraordinary damage caused by the tenant.
At the outset, the court notes that Hamilton contacted her landlord Bosko for a walk-through. Bosko, although he resided in the apartment above his tenant, declined to conduct a walk-through because his property manager (his mother) was unavailable. This is significant. A walk-through allows the landlord to place the tenant on notice of defects and conditions that may affect the return of the tenant’s security deposit. Preferably a list is made of the defects and countersigned by the parties. The tenant, after the walk-through, then can make decisions on whether to remedy the conditions pointed out by the landlord. When a walk-through does not happen because the landlord unreasonably refuses to participate, which the court finds happened here, the court believes that the following evidentiary rule is the appropriate remedy—all inferences from the evidence concerning the condition of the apartment must be construed against the landlord.
*389 In light of all the circumstances, the testimony and particularly the photographs, the court finds all the cleanliness issues were nothing more than normal wear and tear. Thorough cleaning is required when a tenant moves and that cleaning is the responsibility of the landlord. Here, the tenant paid the landlord $27,000 in rent over three years. The landlord must anticipate that when the tenancy ends some of that money he collected will have to be used to make the apartment ready for the next tenant. Candy wrappers under the stove, dog hair on the floor, stains in the sink and dust on ceiling fans is nothing abnormal and, even according to the landlord’s witness, it was nothing that was not remedied with a day’s worth of cleaning.
The damage inflicted on the moulding by Hamilton’s dog and the alteration of an electrical outlet are another matter. These damages exceed those attributable to ordinary wear and tear. Bosko has the burden to prove the amount of the damage. Uniform City Court Act § 1804 demands that “[a]n itemized bill or invoice, receipted or marked paid, or two itemized estimates for services or repairs, are admissible in evidence and are prima facie evidence of the reasonable value and necessity of such services and repairs.” Bosko failed to produce sufficient proof reflecting the reasonable cost of repairs in the form of paid receipts or two itemized estimates (see e.g. Strenio v Grunstein, 48 Misc 3d 131[A], 2015 NY Slip Op 51047[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2014]). The court is left to speculate as to the amount of the damages—no award can be made based on speculation.
Therefore, it is ordered that defendant Bosko pay plaintiff Hamilton $750 which constitutes the full amount of the security deposit together with filing fees of $15.