Filed 07/17/25

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-01707

| | |
|---|---|
| MTC Vermont, Inc.,<br>　　　Appellant<br><br>　　　v.<br><br>Alex Warner,<br>　　　Appellee | On Appeal from Decision of<br>City of Burlington<br>Housing Board of Review |

## DECISION ON APPEAL

This is an appeal of a decision by the Burlington Housing Board of Review ("the Board") involving amounts that were withheld from a security deposit. The Board held a hearing on March 17, 2025, and issued a decision on April 14 in favor of Alex Warner ("Tenant"). The Board concluded that MTC Vermont, Inc. ("Landlord") was required to return a total of $3,589.57 from the initial deposit of $5,700. Landlord appeals that decision pursuant to Rule 74 of the Vermont Rules of Civil Procedure. Landlord argues that the Board's decision was not based on the evidence presented but instead, the Board substituted "its own idea of what constitutes a fair withholding." Landlord's Brief at 1. For the reasons discussed below, the Board's decision is AFFIRMED.

### Evidence Presented to the Board

At the beginning of their lease term in June 2023, Tenant and his housemates gave Landlord a security deposit of $5,700. When the tenants vacated in May 2024, Landlord deducted $3,666.16 for various damage and repairs, returning just $2,035.46.[1] Tenant does not dispute all the amounts that were withheld, but he asserts that Landlord charged an excessive amount for painting and repairs and that Landlord should have refunded Tenant and his housemates a total of $3,589.57, which is an additional $1,554.11. The Court has reviewed the record before the Board and has listened to the evidence presented.

Alex Warner testified in person on behalf of the tenants, and Benjamin D. Heath and Jeremy Dean testified over Zoom on behalf of MTC Vermont, Inc. Tenant testified about the condition of the property when he and the others moved in and the condition of each of the rooms when he and the others moved out at the end of the term. He stated that he and his housemates spent three days cleaning the unit and that it was left in good condition. Tenant

---

[1] The Landlord added $1.62 to the amount returned for interest earned over the course of the year.

acknowledged there were some pinholes and nail holes in the walls from hanging posters or other things but asserted that none of the walls were damaged or should have needed to be completely repainted.

A document titled "Landlord Tenant Checklist" was introduced into evidence, and this document reflects the condition of each of the rooms at move-in and at move-out. The document was signed by Landlord and by Tenants. The checklist identified a broken screen and a few items that needed to be repaired in the kitchen, which Tenant does not dispute. The parties' dispute centers around the amounts Landlord withheld for repairing and painting the walls. Each room was included on the checklist, and the condition of the walls at the time of move-in was listed as "freshly painted." At move-out, the condition of the walls was described as "same" or some variant of "sheetrock spot repairs/touchup paint needed," "screw/nail hole repair," "scuff marks," or "needs cleaning." Tenant did not deny that some repairs to the walls and touch-up painting were warranted and agreed to be responsible for a quarter of the amount withheld for these purposes, but he objected to the amount of paint purchased and the labor costs Landlord withheld for sheetrock repair and painting, which amount exceeded $2,000.

Landlord introduced evidence that it had to purchase eight gallons of paint ($301.80) and pay laborers to perform 34.5 hours of painting/cleaning and 3.5 hours of sheetrock repair ($1,710) to bring the condition of the unit to the standard required before renting it to the next group of tenants. It introduced evidence that there were some scuff marks left on the baseboards/walls and marks or rubber buildup from boots on some stair risers that did not come off with normal cleaning and required repainting. It also offered testimony that some walls required so much touch-up or sheetrock repair that it made more sense to repaint the entire wall rather than just touch up certain areas. Landlord claimed that it only deducted from the security deposit the amounts it paid for materials and labor and that it was, therefore, entitled to deduct these amounts from Tenants' security deposit. Mr. Dean was the individual who inspected the unit and did some of the repairs and painting. He was unable to remember clearly the condition of each of the rooms because too much time had passed. Neither Tenant nor Landlord introduced photographs of the unit.

## Legal Standard

When reviewing a decision by the Board, this Court conducts an on-the-record review of the evidence that was presented; it applies a "deferential standard of review" and "reviews to determine whether the Board made legal errors or findings unsupported by the evidence." *Ramos v. Niquette*, Docket No. 2020-059, 2020 WL 4731891, at *1 (Vt. Aug. 2020) (unpub. mem.) (citing *In re Soon Kwon*, 2011 VT 26, ¶ 6, 189 Vt. 598 (mem.)).[2] The Court does not "reweigh the evidence or assess the credibility of witnesses" because that is the province of the

---

[2] Trial courts are free to "consider three-justice decisions from [the Vermont Supreme] Court for their persuasive value, even though such decisions are not controlling precedent." *Washburn v. Fowlkes*, Docket No. 2015-089, 2015 WL 4771613, at *3 (Vt. Aug. 2015) (unpub. mem.) (citing V.R.A.P. 33.1(d), which provides that an "unpublished decision by a three-justice panel may be cited as persuasive authority but is not controlling precedent," except under limited circumstances).

Board as the trier of fact. *Sweet v. Pierre*, 2018 VT 122, ¶ 13, 209 Vt. 1 (citing *Mullin v. Phelps*, 162 Vt. 250, 261 (1994)). A "determination by the trier of fact must stand if supported by credible evidence, even if inconsistencies or contrary evidence exists." *Gill Terrace Ret. Apartments, Inc. v. Johnson*, 2017 VT 88, ¶ 21, 205 Vt. 549 (quoting *Bruntaeger v. Zeller*, 147 Vt. 247, 252 (1986)); *see Knutsen v. Cigalis*, 2011 VT 128, ¶ 13, 191 Vt. 546 ("If supported by any credible evidence, the trial court's findings will not be disturbed, and the credibility assigned to witnesses and the weight accorded the evidence are left to the trial court's discretion." (citation omitted)).

Analysis

The Vermont Residential Rental Agreements Act provides that "the function of a security deposit is to secure the performance of a tenant's obligations to pay rent and to maintain a dwelling unit." 9 V.S.A. § 4461(a). A landlord is entitled to retain all or a portion of the security deposit for "damage to property of the landlord, unless the damage is the result of normal wear and tear or the result of actions or events beyond the control of the tenant[.]" *Id.* § 4461(b)(2); *see also* Burlington Code of Ordinances § 18-120(a)(1) ("An owner may require a reasonable deposit as a condition for the rental, lease or occupancy of a rental unit as a dwelling as security against damage beyond normal wear and tear to the premises which is attributable to the tenant . . . .").

"Normal wear and tear" is statutorily defined as:

the deterioration that occurs, based upon the reasonable use for which the rental unit is intended, without negligence, carelessness, accident, or abuse of the premises or equipment or chattels by the tenant or members of his or her household or their invitees or guests.

9 V.S.A. § 4451(5); *see Mongeon Bay Props., LLC v. Mallets Bay Homeowner's Ass'n*, 2016 VT 64, ¶¶ 33-34, 202 Vt. 434 (determination of normal wear and tear includes lessee's reasonable conduct in the circumstances and varies depending on type of property and use thereof). There is little Vermont caselaw regarding what constitutes normal wear and tear. *See, e.g.*, *Prevo v. Evarts*, 146 Vt. 216, 218, 500 A.2d 227, 228 (1985) (following evidentiary hearing, trial court found that "substantial damage to the apartment," including walls with "holes smashed in them," broken windows, a damaged light, "a door [that] was heavily scratched, and a number of nails [that] were driven into the walls," far exceeded "fair wear and tear experienced normally in rental property"). However, courts in New York have determined that normal wear and tear includes cleaning dirty appliances and repairing damage to walls, flooring, windows, and blinds, *Camacho v. Paduch*, 78 N.Y.S.3d 905, 913 (City Ct. 2018), repainting walls, sanding and staining floors and replacing appliances, *Wood v. Bosch*, 213 N.Y.S.3d 842, at *2 (City Ct. 2022), and cleaning a bathroom and windows, spackling and painting walls, and carpet cleaning, *James Bohl, CPA, P.C. v. Poffenbarger*, 100 N.Y.S.3d 609, at *1-2 (App. Div. 2018).

In finding in favor of Tenant, the Board wrote:

3

[T]he Board finds that the Unit needed minor drywall repair and paint touchups because the tenants posted decorations on the walls. Decorating walls is part of the ordinary use and enjoyment of a residential unit. As such, the Board finds there was nothing extraordinary or abusive about the tenants' use of the premises, so that the damage constituted ordinary wear and tear and not extraordinary damage to the Unit for which [Landlord] could withhold sums from the security deposit.

Decision at 12-13.[3] Contrary to Landlord's assertions, the Board did not simply apply its own view of the reasonableness of the cleaning and repair fees. Rather, the Board based its decision on the checklist, which it afforded considerable weight since it was completed contemporaneously, and the parties' testimony concerning the condition of the unit. It noted that the parties' descriptions of the unit at the end of the lease term were not consistent, leaving it to rely on the move in/move-out checklist. The move-out checklist "noted simply that most rooms needed minor drywall repairs or paint touchups," which supported Tenant's position and testimony. Decision at 11. The Board found that Landlord should not have deducted costs required to repaint toe kicks, or stair risers: "As the name 'toe kick' implies, there is nothing inherently abusive in allowing a booted toe to make contact with the vertical alignment of a stair." *Id*.

The Court concludes that the evidentiary record supports the Board's decision. The Board did not err in determining that pin/nail holes in walls, scuff marks on baseboards or walls, and rubber marks on stair risers constitute normal wear and tear arising out of Tenant's reasonable use of the premises. As the Board noted, landlords should reserve some of the money they collect in rents to make the units ready for the next tenant. Decision at 12; *see also Hamilton v. Bosko*, 41 N.Y.S.3d 690, 692 (City Ct. 2016) ("The landlord must anticipate that when the tenancy ends some of that money he collected will have to be used to make the apartment ready for the next tenant."). Moreover, the Board was not bound by Landlord's characterization of the degree of damage and repairs needed; it was entitled to make its own determinations based on its assessment of the evidence and credibility of the witnesses. To the extent Landlord challenges such determinations, that is beyond the scope of review of this Court. *See Sweet*, 2018 VT 122, ¶ 13.

Order

For the foregoing reasons, the decision of the Burlington Housing Board of Review is AFFIRMED. Tenant is entitled to the return of $3,589.57 from the $5,700 initially paid as a security deposit.[4] The Court awards the interest awarded by the Board as prejudgment interest,

---

[3] In concluding that the alleged damage fell within the definition of normal wear and tear, the Board was prepared to find that Landlord was not entitled to withhold any amount for painting/sheetrock repair. However, because Tenant agreed to be responsible for one-quarter of this cost, the Board awarded Tenant only $1,554.11 of the amount withheld for the painting and repairs.

[4] Tenant asserts that the original check Landlord sent has not been cashed and requests that Landlord be ordered to issue a check in the full amount of $3,587.95, plus interest, rather than

4

calculated from June 6, 2024, which was when Landlord wrongfully withheld the $1,554.11 at issue.  The award shall accrue post-judgment interest at the statutory rate of 12%.  *See* 12 V.S.A. § 2903(c).

Electronically signed on July 16, 2025 at 3:41 PM pursuant to V.R.E.F. 9(d).

_____

Megan J. Shafritz
Superior Court Judge

---

just the $1,554.11 awarded by the Board.  The Court is confident that the parties will be able to work this out in good faith between themselves.  Otherwise, Tenant may be able to seek further relief from the Board.